# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DANA KIM SHELTON,<br><br>Debtor, | Case No. 8:20-cv-00268-JWH |
| DANIEL KEITH LARSON;<br>ERIN ELLEN LARSON; and<br>SHARON DEON SIMS,<br><br>Appellants,<br><br>v.<br><br>DANA KIM SHELTON,<br><br>Appellee. | **MEMORANDUM OPINION RE APPEAL FROM ORDER OF THE BANKRUPTCY COURT FOR CONTEMPT AGAINST APPELLANTS FOR VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION** |

## I. INTRODUCTION

Appellants Daniel Keith Larson, Erin Ellen Larson, and Sharon Deon Sims appeal the order of the bankruptcy court holding them, jointly and severally, in civil contempt for violation of the bankruptcy discharge injunction.[1] The Court previously determined that this this matter is appropriate for resolution without a hearing. *See* Fed. R. Bankr. P. 8019(b)(3); L.R. 7-15.[2] For the reasons set forth below, this Court **AFFIRMS**.

## II. BACKGROUND

### A. Shelton's Bankruptcy Case

On July 20, 2017, Dana Kim Shelton filed a voluntary petition under Chapter 7 of the Bankruptcy Code,[3] thereby commencing bankruptcy case No. 8:17-bk-12887-SC.[4] In her bankruptcy schedules, Shelton listed, *inter alia*, her interests in the real property located at 1221 N. Amelia Street, Anaheim, California 92807 (the "Real Property");[5] her 25% interest as a beneficiary in the Barbara Anne Larson Trust (the "Larson Trust");[6] her bank accounts;[7] and the first deed of trust against the Real Property with a 50% beneficial interest to the Larson Trust and 50% beneficial interest jointly to Daniel Larson and Erin Larson.[8] Appellants Sims and Daniel Larson, as well as Peter Kote as trustee of

---

[1] *See* Am. Notice of App. (the "Notice") [ECF No. 8].
[2] *See* Order [ECF No. 42].
[3] Unless otherwise indicated, all chapter and section citations refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.
[4] *See* Appellant's App. (the "Appendix") [ECF Nos. 36 through 36-4] 205. The Appendix consists of four consecutively paginated attachments [ECF Nos. 36-1 through 36-4]. Unless otherwise indicated, all citations to the Appendix refer to the reference numbers appearing in the bottom right-hand corner of the respective documents.
[5] *Id.* at 215.
[6] *Id.* at 218.
[7] *Id.* at 217.
[8] *Id.* at 223 & 224.

the Larson Trust, are listed on the master mailing list for Shelton's bankruptcy case.[9] Appellants actively participated in Shelton's bankruptcy case, including by seeking relief from the automatic stay, filing proofs of claim, and litigating those claims.[10]

Shelton received a discharge of all pre-petition debts on November 6, 2017.[11]

## B. Pre-Petition State Court Proceedings

On January 24, 2012, Daniel Larson and Sims commenced an action in the Orange County Superior Court for the administration of the Larson Trust (the "Trust Action").[12] Eventually, Daniel Larson and Sims moved to remove Shelton as trustee of the Larson Trust. That motion was granted, and Peter Kote was appointed as trustee.

More than a year later, in March 2013, Shelton commenced an action against Appellants in the Orange County Superior Court in which Shelton sought, among other relief, to quiet title to the Real Property and to enjoin Appellants from foreclosing against the Real Property (the "Title Action").[13] On March 24, 2014, after a bench trial, the state court enjoined Appellants from foreclosing but denied Shelton's claim to quiet title. Thereafter, the Trust Action and the Title Action were consolidated (the "State Court Action").

On December 30, 2014, Daniel Larson and Sims filed a petition to recover attorneys' fees from Shelton in the State Court Action, asserting various theories of recovery.[14] That petition was stayed by the state court. More than

---

[9] *Id.* at 250–252.
[10] *See, e.g.*, *id.* at 250–252, 258–261, 263–280, 282-283, 285-286, & 288-289.
[11] *See id.* at 254–256.
[12] *See id.* at 77.
[13] *See id.* at 78.
[14] *See id.* at 75–97.

-3-

four years later, on May 15, 2019, Appellants filed a renewed request in the State Court Action to recover attorneys' fees in connection with Shelton's pre-petition conduct.[15]  In the months thereafter, Appellants' activities in the State Court Action included arguing and conducting a hearing seeking attorneys' fees against Shelton, noticing a trial date, and conducting a trial on November 25, 2019.[16]

### C.     Bankruptcy Contempt Proceedings

On October 29, 2019, Shelton filed a motion in the bankruptcy court for an order to show cause and for an order holding Appellants in contempt for violating the discharge injunction.[17]  After a hearing on December 18, 2019, the bankruptcy court granted Shelton's OSC Motion and ordered Appellants to show cause why they should not be held in contempt.[18]  On January 22, 2020, the bankruptcy court conducted a hearing on the order to show cause and made findings orally on the record that Appellants violated the discharge injunction. On January 30, 2020, the bankruptcy court entered a written order imposing civil contempt sanctions against Appellants for the reasons stated on the record at the hearing (the "Order").[19]

## III. JURISDICTION

The bankruptcy court had jurisdiction over Shelton's bankruptcy case pursuant to 28 U.S.C. §§ 1334 & 157(b).  This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a).

---

[15]    *See id.* at 99–121.
[16]    *See id.* at 3:10–15.
[17]    *See id.* at 57–194 (the "OSC Motion").
[18]    *See id.* at 201–203.
[19]    *See id.* at 2–14.

## IV. ISSUES

1. Did the bankruptcy court have jurisdiction to hold Appellants in civil contempt for violation of the bankruptcy discharge injunction?

2. Did the bankruptcy court err when it imposed civil contempt sanctions against Appellants for violating the discharge injunction?

## V. STANDARD OF REVIEW

This court examines the bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *In re BCE W., L.P.*, 319 F.3d 1166, 1170 (9th Cir. 2003); *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). The bankruptcy court's decision to impose civil contempt sanctions for a violation of the discharge injunction is reviewed for an abuse of discretion. *Nash v. Clark Cty. Dist. Attorney's Office (In re Nash)*, 464 B.R. 874, 878 (B.A.P. 9th Cir. 2012). Under the abuse of discretion standard, the first step is to determine *de novo* whether the bankruptcy court applied the correct legal rule. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (*en banc*). The failure to apply the correct legal rule constitutes an abuse of discretion. *Mujica v. AirScan, Inc.*, 771 F.3d 580, 589 (9th Cir. 2014). If the bankruptcy court applied the correct legal rule, then the second step is to determine whether the bankruptcy court's application of the law to the facts was: "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the record.'" *Id.* (quoting *Hinkson*, 585 F.3d at 1262).

## VI. DISCUSSION

### A. The Bankruptcy Court Had Jurisdiction to Hold Appellants in Civil Contempt for Violating the Discharge Injunction

Federal district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts are further authorized to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or

arising in or related to a case under title 11" to the bankruptcy judges for the district. 28 U.S.C. § 157(a). Under that statute, bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, . . . ." 28 U.S.C. § 157(b).

The bankruptcy judge must determine whether a proceeding is a core proceeding; however, a "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Core proceedings include, *inter alia*, "determinations as to the dischargeability of particular debts," 28 U.S.C. § 157(b)(2)(I), "objections to discharges," 28 U.S.C. § 157(b)(2)(J), and proceedings to determine whether a violation of the discharge injunction has occurred, *see Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 505–506 (9th Cir. 2002). *See also Stern v. Marshall*, 564 U.S. 462, 473–474 (2011).

Here, after Shelton received her discharge, Appellants renewed their claim for pre-petition attorneys' fees and costs in the State Court Action against Shelton and took further overt acts in furtherance of that effort. For the reasons discussed in detail in the subsequent section, Appellants' claim was a discharged debt, and, thus, it was subject to the discharge injunction. Accordingly, the bankruptcy court had exclusive jurisdiction to determine whether Appellants violated the discharge injunction and to impose civil contempt sanctions after finding any such violation. *See Walls*, 276 F.3d at 505–506; 11 U.S.C. §§ 105(a) & 524; 28 U.S.C. § 157(b). In other words, the bankruptcy proceeding at issue was one "arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1); *see Stern*, 564 U.S. at 475–477; *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010) ("A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a

cause of action created or determined by a statutory provision of the Bankruptcy Code.").

  Appellants' arguments to the contrary are not persuasive. Appellants appear fundamentally to misunderstand the claims at issue in this appeal. Indeed, Appellants' abstention-related jurisdictional arguments are premised upon the idea that the bankruptcy court did not have jurisdiction over issues related to the State Court Action or, more generally, to the Larson Trust.[20] But this appeal concerns the bankruptcy court's authority to conduct proceedings to determine whether Appellants violated the discharge injunction, and those proceedings are unmistakably core proceedings over which the bankruptcy court has jurisdiction. *See Walls*, 276 F.3d at 505–506. The bankruptcy court did not adjudicate any issues in relation to the State Court Action; it merely considered whether Appellants' conduct in connection with that action, after Shelton received a discharge, constituted a violation of the discharge injunction.

  Appellants' contention that the bankruptcy court lacked personal jurisdiction[21] is similarly erroneous. The record reflects that Appellants served the underlying OSC Motion by U.S. Mail, as required by the Federal Rules of Bankruptcy Procedure.[22] *See* Fed. R. Bankr. P. 7004 & 9014. Moreover, Appellants filed proofs of claim and various motions in Shelton's bankruptcy case and, thereby, submitted to the bankruptcy court's jurisdiction.[23]

  Accordingly, this Court concludes that the bankruptcy court had jurisdiction over the underlying proceeding.

---

[20] *See* Appellants' Opening Brief [ECF No. 23] 10:1–13:12 & 25:13–29:6.
[21] *See id.* at 25:13–27:9.
[22] *See* Appendix 196–198.
[23] *See id.* at 258–261, 263–280, 282-283, 285-286, & 288-289.

**B.     The Bankruptcy Court Did Not Abuse Its Discretion When It Imposed Civil Contempt Sanctions Against Appellants for Violating the Discharge Injunction**

Under § 727, subject to certain exceptions, a discharge in a chapter 7 case:

> [D]ischarges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b).  The Bankruptcy Code further prescribes the effect of discharge and provides:

> (a)    A discharge in a case under this title—
>
> * * *
>
> (2)    operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).  Under § 105(a), a bankruptcy court is authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  Accordingly, courts uniformly recognize that "[c]ivil contempt, imposed under the court's section 105 powers, is the normal sanction for violation of the discharge injunction." COLLIER ON BANKRUPTCY ¶ 524.02(2)(c) & n.54 (16th ed. 2021) (citing cases); *see also Walls*, 276 F.3d at 507.  "[C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's

compliance with the discharge injunction."  *Walls*, 276 F.3d at 507; *see also Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001) (action for violation of § 524 can be raised only through contempt).

    Here, Appellants appear to contend that the pre-petition debt for attorneys' fees and costs that Shelton owed to them in connection with the State Court Action was not discharged due to actual fraud under §§ 523(a)(2)(A) and 523(a)(4).[24]  Appellants assert various arguments regarding the alleged fraud and appear to ask this Court to rule on that issue.[25]  However, the record reflects that, in the first instance, Appellants failed to seek a determination of non-dischargeability, which is a prerequisite under the Bankruptcy Code.

    "An action to determine whether a particular debt is excepted from a debtor's discharge—*i.e.*, a 'dischargeability determination'—may be instituted either by the debtor or by any creditor."  COLLIER ON BANKRUPTCY ¶ 523.04.  "The procedure for dischargeability proceedings is governed by Federal Rules of Bankruptcy Procedure 7001 and 7003, which provide that such an action is an adversary proceeding that must be initiated by the filing of a complaint."  *Id.*  In cases under Chapter 7, a complaint to determine the dischargeability of debts under §§ 523(a)(2) and (a)(4) "must be filed within 60 days after the date first set for the meeting of creditors under section 341(a)."  Fed. R. Bankr. P. 4007(c).  In the absence of a finding of non-dischargeability, the debtor is discharged from a debt of the kind specified in §§ 523(a)(2) and (a)(4).  *See* 11 U.S.C. § 523(c)(1).

    Here, Appellants never sought, by adversary proceeding or otherwise, a determination that the debt allegedly owed by Shelton was non-dischargeable

---

[24]    *See* Appellants' Opening Brief 29:7–31:21.
[25]    *See id.*

under § 523(a)(2). Appellants failed to do so notwithstanding the fact that they had notice of, and actively participated in, Shelton's bankruptcy case.[26] Therefore, pursuant to § 523(c)(1), the debt at issue was discharged, and, pursuant to § 524(a)(2), the discharge injunction barred Appellants from pursuing the collection of that debt. Accordingly, the bankruptcy court did not err when if found that Appellants' actions post-discharge to collect upon the discharged debt violated the discharge injunction.[27] For the same reasons, the bankruptcy court had authority under § 105(a) to impose civil contempt sanctions against Appellants for violation of the discharge injunction. *See Walls*, 276 F.3d at 507.

## VII. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the order of the bankruptcy court.

**IT IS SO ORDERED.**

Dated: October 18, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[26] *See* Appendix 250–252, 258–261, 263–280, 282-283, 285-286, & 288-289.
[27] *See id.* at 3:1–15.